| | |
|---|---|
| Xavier Becerra<br>Attorney General of California<br>David A. Zonana<br>Supervising Deputy Attorney General<br>George Torgun, State Bar No. 222085<br>Mary S. Tharin, State Bar No. 293335<br>Deputy Attorneys General<br>  1515 Clay Street, 20th Floor<br>  P.O. Box 70550<br>  Oakland, CA  94612-0550<br>  Telephone:  (510) 879-1974<br>  Fax:  (510) 622-2270<br>  E-mail:  Mary.Tharin@doj.ca.gov<br><br>*Attorneys for People of the State of California, ex rel. Xavier Becerra, Attorney General* | Hector Balderas<br>Attorney General of New Mexico<br>Ari Biernoff, State Bar No. 231818<br>Bill Grantham, Pro Hoc Vice Pending<br>Assistant Attorneys General<br>  201 Third St. NW, Suite 300<br>  Albuquerque, NM 87102<br>  Telephone: (505) 717-3520<br>  E-Mail: wgrantham@nmag.gov<br><br>*Attorneys for the State of New Mexico* |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA, ex rel. XAVIER BECERRA, ATTORNEY GENERAL; STATE OF NEW MEXICO, ex rel. HECTOR BALDERAS, ATTORNEY GENERAL,**<br><br>                              Plaintiff,<br><br>       v.<br><br>**UNITED STATES DEPARTMENT OF THE INTERIOR; OFFICE OF NATURAL RESOURCES REVENUE; RYAN ZINKE,** Secretary of the Interior; and **GREGORY GOULD,** Director, Office of Natural Resources Revenue,<br><br>                              Defendants. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Administrative Procedure Act,<br>5 U.S.C. § 551 *et seq.*) |

## INTRODUCTION

1. On July 1, 2016, the Office of Natural Resources Revenue ("ONRR"), a division of the U.S. Department of the Interior ("DOI"), finalized the "Consolidated Federal Oil & Gas and Federal & Indian Coal Valuation Reform" rule ("Rule") in order to clarify the process for calculating royalties on oil, gas, and coal extracted from federal and Indian lands.  81 Fed. Reg.

1

43,338 (July 1, 2016). ONRR finalized the Rule after five years of public engagement including public workshops and an extended notice-and-comment period.

2. The Rule responded to dramatic changes that have taken place in domestic energy markets by providing much-needed updates to existing regulations. Significantly, the Rule addressed a coal industry practice of depressing commodity values by selling coal to affiliated companies at artificially low prices. *Id*. at 43,339. By offering greater simplicity, clarity, and consistency in product valuation, the Rule sought to ensure that American taxpayers received royalties reflecting the fair market value for natural resources extracted from public lands. 80 Fed. Reg. 608 (Jan 6, 2015).

3. The effective date of the Rule was January 1, 2017. However, nearly two months after the Rule went into effect, ONRR issued a notice "postponing" the effectiveness of the Rule until the resolution of pending litigation that had been filed against the Rule. ONRR has instructed oil, gas, and coal lessees to operate under regulations that predated the Rule—the very regulations that the agency determined were unclear, inconsistent, and unfair to taxpayers.

4. An agency cannot "postpone" the effective date of a rule when that effective date has already come and gone. Further, the legal basis on which the agency relied for the postponement, Section 705 of the Administrative Procedure Act ("APA"), does not apply to rules that have already gone into effect. ONRR's attempt to delay the Rule after it became effective is facially invalid, and constitutes an attempted end-run around the APA's notice-and-comment requirements.

5. Accordingly, Plaintiffs People of the State of California, ex rel. Xavier Becerra, Attorney General, and State of New Mexico, ex rel. Hector Balderas, Attorney General ("Plaintiffs") seek a declaration that Defendants' action violated the APA, and an injunction requiring Defendants to vacate the postponement and immediately reinstate the Rule.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1361 (action to compel officer or agency to perform duty owed to Plaintiffs), and 5 U.S.C. §§ 701-706 (Administrative Procedure Act). An actual

controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 705-706.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because this is the judicial district in which Plaintiff People of the State of California, ex rel. Xavier Becerra, Attorney General resides and this action seeks relief against federal agencies and officials acting in their official capacities.

**INTRADISTRICT ASSIGNMENT**

8. Pursuant to Civil Local Rules 3-5(b) and 3-2(c), there is no basis for assignment of this action to any particular location or division of this Court.

**PARTIES**

9. Plaintiff, PEOPLE OF THE STATE OF CALIFORNIA, brings this action by and through Attorney General Xavier Becerra. The Attorney General is the chief law enforcement officer of the State and has the authority to file civil actions in order to protect public rights and interests, including actions to protect the natural resources of the State. Cal. Const., art. V, § 13; Cal. Gov. Code §§ 12600-12612. This challenge is brought pursuant to the Attorney General's independent constitutional, statutory, and common law authority to represent the public interest.

10. Fifteen percent of California's land area—15.2 million acres of public lands and 592,000 acres of Native American tribal land—is managed by the federal government. These lands contain approximately 600 producing oil and gas leases covering more than 200,000 acres and 7,900 usable oil and gas wells. California is a leading state in terms of oil extraction on public lands, producing about 15 million barrels annually, and also produces approximately 7 billion cubic feet of natural gas. Since 2008, California has received an average of $82.5 million annually in royalties from federal mineral extraction within the state.

11. Plaintiff STATE OF NEW MEXICO brings this action by and through Attorney General Hector Balderas. The Attorney General of New Mexico is authorized to prosecute in any court or tribunal all actions and proceedings, civil or criminal, when, in his judgment, the interest of the state requires such action. N.M. Stat. Ann. § 8-5-2.

12. New Mexico is second only to Wyoming in the number of producing oil and natural gas leases on federal land. More than one-third of New Mexico's land is federally administered. Annually, New Mexico produces approximately 1,220 billion cubic feet of natural gas (5% of the U.S. total), of which approximately 60% is from federal and Indian lands; 85,200 million barrels of crude oil (4% of the U.S. total), of which approximately 45% is from federal and Indian lands; and about 22 million short tons of coal (2% of the U.S. total). Since 2008, New Mexico has received an annual average of $470 million in federal mineral extraction royalties.

13. The People of California and the State of New Mexico have an interest in the proper management of their respective States' natural resources and in receiving an appropriate share of royalty payments from oil and gas that is produced on federal lands within their States. ONRR's delay of the Rule has impacted or will impact the amount of royalties received by the States on the extraction of these resources. Plaintiffs have suffered legal wrong by ONRR's illegal action and have standing to bring this suit.

14. Defendant UNITED STATES DEPARTMENT OF THE INTERIOR is an agency of the United States government and bears responsibility, in whole or in part, for the acts complained of in this Complaint. The DOI is responsible for managing the collection and calculation of royalties and other payments due on oil, gas and coal produced on federal and Indian lands. 30 U.S.C. §§ 187, 1701.

15. Defendant OFFICE OF NATURAL RESOURCES REVENUE is an agency of the U.S. Department of the Interior and bears responsibility, in whole or in part, for the acts complained of in this Complaint. ONRR is the federal agency charged with managing and ensuring full payment of revenues owed for development of the nation's federally-owned natural resources. 30 CFR § 1201 *et seq*.

16. Defendant RYAN ZINKE is the Secretary of the Interior, and is sued in his official capacity. Mr. Zinke oversees the responsible development of energy supplies, including natural resource extraction, on public lands and waters, and has authority to promulgate regulations establishing the value of federal oil and gas production, and federal and Indian coal production. 25 U.S.C. § 396(d); 30 U.S.C. §§ 189, 359; 43 U.S.C. § 1334.

Complaint for Declaratory and Injunctive Relief  (Case No. TBD)

1  17. Defendant GREGORY GOULD is the Director of ONRR, and is sued in his official capacity. Mr. Gould is responsible for the collection and disbursement of billions of dollars annually in revenues from energy production on all federal and Indian lands. 30 CFR § 1201.100.

**STATUTORY BACKGROUND**

18. The Administrative Procedure Act governs the procedures and practices of administrative law, including the procedural requirements that agencies must employ when making decisions. 5 U.S.C. § 553. The APA places on agencies the obligation to engage in a notice-and-comment process prior to formulating, amending, or repealing a rule. *Id*. §§ 551(5), 553. This process is designed to "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." *Id*. § 553(c).

19. Section 705 of the APA states: "When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review." 5 U.S.C. § 705.

20. Under the APA, a "reviewing court shall…hold unlawful and set aside" agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706.

**FACTUAL AND PROCEDURAL BACKGROUND**

21. Each year ONRR collects billions of dollars in royalties on coal, oil and gas extracted from public lands. A significant portion of this revenue is distributed to states through direct disbursements and grants. 30 U.S.C. § 191(a). Since 2008, California and New Mexico have received tens or hundreds of millions of dollars respectively in royalties from federal mineral extraction within their states.

22. Existing regulations governing the valuation of federally-owned natural resources largely date back to the 1980s and fail to take into account dramatic changes that have occurred in the industry and marketplace for these minerals. 80 Fed. Reg. at 608. As a result, taxpayers receive inadequate returns from the extraction of domestic energy resources. *Id*.

23. In 2007, the DOI's Royalty Policy Committee issued a report recommending that ONRR clarify its regulations governing gas valuation and revise its regulations for "calculating

5

prices used in checking royalty compliance for solid minerals, with particular attention to non-arm's-length transactions." *Id*.

24.   In 2011, ONRR began a five-year rulemaking process to update existing regulations for oil, gas, and coal produced from federal leases and coal produced from Indian leases. 76 Fed Reg. 30,878, 30,881 (May 27, 2011). The agency conducted outreach to stakeholders and tribes including six public workshops, and considered the information gained through this outreach in crafting a revised set of regulations. 81 Fed. Reg. at 43,338.

25.   On January 6, 2015, ONRR issued a Proposed Rule to amend the valuation regulations. In particular, ONRR stated that its intent was "to provide regulations that (1) offer greater simplicity, certainty, clarity, and consistency in product valuation for mineral lessees and mineral revenue recipients; (2) are more understandable; (3) decrease industry's cost of compliance and ONRR's cost to ensure industry compliance; and (4) provide early certainty to industry and ONRR that companies have paid every dollar due." 80 Fed. Reg. at 608.

26.   ONRR accepted public comment on the Proposed Rule through May 8, 2015 and received more than 1,000 pages of written comments from over 300 commenters. 81 Fed. Reg. at 43,338. For example, the California State Controller's Office submitted comments on the Proposed Rule on May 5, 2015, acknowledging "the impact of ONRR's proposals for gas valuation on California's revenue interests" and "applaud[ing] its effort to pursue some long-overdue reforms." A coalition of non-governmental organizations submitted comments on May 8, 2015, acknowledging that the Proposed Rule took important steps to "close an accounting loophole that in recent years has enabled coal companies to sell federal coal to [their] own subsidiaries, pay royalties on the initial sale, then reap windfall profits when those subsidiaries sell the same coal at a much higher price without any additional royalty."

27.   After carefully considering public comments, ONRR finalized the Valuation Rule on July 1, 2016. 81 Fed. Reg. 43,338. ONRR estimates that the Rule would increase royalty collections by between $71.9 million and $84.9 million annually. *Id*. at 43,359.

28.   The Rule was issued pursuant to ONRR's authority to collect, account for, and verify natural resource and energy revenues—authority granted by Congress through statutes including

the Mineral Leasing Act (30 U.S.C. § 181 *et seq*.), the Outer Continental Shelf Lands Act (43 U.S.C. § 1331 *et seq*.), and the Federal Oil & Gas Royalty Management Act of 1982 (30 U.S.C. § 1701 *et seq*.).  81 Fed. Reg. at 43,369.

29.  The Rule contains a number of provisions designed to ensure the accurate calculation of royalties and commodity values.  By amending the processes for valuating non-arm's-length coal sales, the Rule seeks to prevent an industry practice of minimizing royalty payments by selling coal to subsidiaries for less than market value.  80 Fed. Reg. at 609.  The Rule further allows ONRR to consider downstream commodity prices, thus ensuring sufficient collection of royalties on exported minerals that garner higher prices overseas than they would in the domestic market.  *Id*.  Additionally, the Rule gives ONRR discretion to set a "reasonable value of production" where there is evidence that a lessee has engaged in fraudulent practices when determining commodity values.  81 Fed. Reg. at 43,341.

30.  On December 29, 2016, various coal and oil industry groups challenged the Rule in U.S. District Court for the District of Wyoming.  *Cloud Peak Energy, Inc. v. United States Dep't of the Interior,* Case No. 16-cv-315–NDF (D. Wyo.); *American Petroleum Inst. v. United States Dep't of the Interior,* Case No. 16-cv-316–NDF (D. Wyo.); *Tri- State Generation and Transmission Ass'n, Inc. et al., v. United States Dep't of the Interior,* Case No. 16-cv-319–NDF (D. Wyo.).  On March 24, 2017, prior to the submission of any briefing on the merits, the district court granted the federal government's request for a 90-day stay of the litigation.

31.  On January 1, 2017, the Rule went into effect.  81 Fed. Reg. at 43,338.

32.  On February 22, 2017, James D. Steward, Deputy Director of ONRR, issued a letter entitled "Stay of the Consolidated Federal Oil & Gas and Federal & Indian Coal Valuation Reform Final Rule," which announced that the agency had "decided to postpone the effective date of the 2017 Valuation Rule" and directed federal and Indian lessees to value, report and pay royalties under preexisting rules.  The Deputy Director cited Section 705 of the APA as the basis for this postponement and stated that the agency would publish a Federal Register notice to this effect.

33. On February 27, 2017, ONRR issued a delay notice for the Rule in the Federal Register, citing Section 705 of the APA and the pending litigation. 82 Fed. Reg. 11,823 (Feb. 27, 2017) ("Postponement of Effectiveness of the Consolidated Federal Oil & Gas and Federal & Indian Coal Valuation Reform 2017 Valuation Rule") ("Delay Notice"). Specifically, ONRR stated that: "In light of the existence and potential consequences of the pending litigation, ONRR has concluded that justice requires it to postpone the effectiveness of the 2017 Valuation Rule pursuant to 5 U.S.C. 705 of the Administrative Procedure Act, pending judicial review." *Id*. The agency attempted to justify the delay by arguing it would be easier for industry to maintain existing accounting practices. *Id*. ONRR further noted that "[a]lthough the 2017 Valuation Rule took effect on January 1, 2017, Federal and Indian Lessees are not required to report and pay royalties under the Rule until February 28, 2017." *Id*.

34. ONRR's action was swiftly rebuked by members of Congress. Senator Maria Cantwell (ranking member of the Senate Energy and Natural Resources Committee) and Representative Raúl Grijalva (ranking member of the House Committee on Natural Resources) both sent letters to the DOI decrying the illegal postponement as a contravention of the APA and demanding that the agency reinstate the Rule.

35. On April 4, 2017, ONRR published an "advance notice of public rulemaking" in the Federal Register seeking comment on whether the Rule is needed and what, if any, revisions should be made to it. 82 Fed. Reg. 16,323 (Apr. 4, 2017). On the same day, ONRR published a proposal to repeal the Rule "in its entirety" in order to "maintain the current regulatory status quo," notwithstanding that the Rule had been illegally stayed. 82 Fed. Reg. 16,325 (April 4, 2017).

**FIRST CAUSE OF ACTION**
**(Violation of the APA, 5 U.S.C. §§ 553, 705)**

36. Paragraphs 1 through 35 are realleged and incorporated herein by reference.

37. By applying Section 705 of the APA to a rule that was already in effect, Defendants contradicted the plain meaning of "postpon[ing] the effective date" of a rule. 5 U.S.C. § 705.

38. Because the Rule was already in effect prior to its postponement, Defendants have effectively revoked the Rule without completing the notice-and-comment procedures required by the APA.  5 U.S.C. § 553.

39. Accordingly, Defendants' action was unlawful and contrary to the requirements of the APA.  5 U.S.C. §§ 553, 705.

## SECOND CAUSE OF ACTION
### (Violation of the APA, 5 U.S.C. § 706)

40. Paragraphs 1 through 39 are realleged and incorporated herein by reference.

41. Defendants, by invoking APA Section 705 to "delay" the Rule after it had already gone into effect, acted in a manner that was arbitrary, capricious, an abuse of discretion, not in accordance with law, and in excess of their statutory authority.  5 U.S.C. § 706.

## THIRD CAUSE OF ACTION
### (Violation of the APA, 5 U.S.C. § 706)

42. Paragraphs 1 through 41 are realleged and incorporated herein by reference.

43. Defendants did not, in issuing the Delay Notice, adequately consider economic and environmental harms to the public as required by the four-part test for postponing a rule pursuant to Section 705 of the APA.

44. The grounds offered by Defendants do not justify the delay of the Rule.

45. Delay of the Rule is therefore arbitrary and capricious, an abuse of discretion, not in accordance with law, and in excess of Defendants' statutory authority.  5 U.S.C. § 706.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Issue a declaratory judgment that Defendants acted arbitrarily, capriciously, contrary to law, abused their discretion, and failed to follow the procedure required by law in their delay of the Valuation Rule, in violation of the APA;

2. Vacate Defendants' unlawful postponement of the Rule;

3. Issue a mandatory injunction compelling Defendants to reinstate the Rule;

Complaint for Declaratory and Injunctive Relief  (Case No. TBD)

4. Award Plaintiffs their costs, expenses, and reasonable attorneys' fees; and

5. Award such other relief as the Court deems just and proper.

Dated: April 26, 2017                                     Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
DAVID A. ZONANA
Supervising Deputy Attorney General
GEORGE TORGUN
MARY S. THARIN
Deputy Attorney General


/s/  Mary S. Tharin
MARY S. THARIN
Deputy Attorney General
*Attorneys for People of the State of California, ex rel. Xavier Becerra, Attorney General*


HECTOR BALDERAS
Attorney General of New Mexico

/s/  Ari Biernoff
ARI BIERNOFF
BILL GRANTHAM
Assistant Attorneys General
State of New Mexico
Office of the Attorney General
201 Third St. NW, Suite 300
Albuquerque, NM  87102
(505) 717-3520


OK2017950035

10