| | |
|---|---|
| Xavier Becerra<br>Attorney General of California<br>David A. Zonana, State Bar No. 196029<br>Supervising Deputy Attorney General<br>George Torgun, State Bar No. 222085<br>Mary S. Tharin, State Bar No. 293335<br>Deputy Attorneys General<br>  1515 Clay Street, 20th Floor<br>  P.O. Box 70550<br>  Oakland, CA 94612-0550<br>  Telephone: (510) 879-1974<br>  Fax: (510) 622-2270<br>  E-mail: Mary.Tharin@doj.ca.gov | Hector Balderas<br>Attorney General of New Mexico<br>Ari Biernoff, State Bar No. 231818<br>Bill Grantham (admitted *pro hac vice*)<br>Assistant Attorneys General<br>  201 Third St. NW, Suite 300<br>  Albuquerque, NM 87102<br>  Telephone: (505) 717-3520<br>  E-Mail: wgrantham@nmag.gov<br><br>*Attorneys for the State of New Mexico* |

*Attorneys for the People of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PEOPLE OF THE STATE OF CALIFORNIA, ex rel. XAVIER BECERRA, ATTORNEY GENERAL; STATE OF NEW MEXICO, ex rel. HECTOR BALDERAS, ATTORNEY GENERAL,**<br><br>                   Plaintiffs,<br><br>     v.<br><br>**UNITED STATES DEPARTMENT OF THE INTERIOR; OFFICE OF NATURAL RESOURCES REVENUE; RYAN ZINKE,** Secretary of the Interior; and **GREGORY GOULD,** Director, Office of Natural Resources Revenue,<br><br>                   Defendants. | Case No. 3:17-cv-02376 EDL<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF ON PRUDENTIAL MOOTNESS**<br><br>Judge: Hon. Elizabeth D. Laporte<br>Courtroom: Courtroom E, 15th Floor<br>Action Filed: April 26, 2017 |

# INTRODUCTION

Defendants the Department of the Interior and the Office of Natural Resources Revenue violated the plain language of the Administrative Procedure Act ("APA") when they issued the Delay Notice after the effective date of the Valuation Rule. The Delay Notice remains in effect today. Thus, the present controversy before this court is live, and there is no dispute that the Court has subject matter jurisdiction and may rule on the matter before it. Moreover, the Court can provide effective relief both by vacating the Delay Notice and by declaring Defendants' actions unlawful. Contrary to the anticipated assertions of Defendants, the doctrine of prudential mootness, which has been acknowledged but not adopted by the Ninth Circuit, does not apply here because the Court clearly can afford relief to Plaintiffs, and equitable considerations weigh strongly in favor of the Court doing so. Accordingly, this Court should grant Plaintiffs' Motion for Summary Judgment (Dkt. No. 13) and vacate the Delay Notice.

# FACTUAL AND PROCEDURAL BACKGROUND

After a nearly five-year-long rulemaking process, on July 1, 2016, Defendants finalized the Valuation Rule. 81 Fed. Reg. 43,338. Six months later, after extensive efforts by Defendants to prepare the regulated community, on January 1, 2017, the Rule became effective. *Id.* However, two months after the Rule took effect, Defendants issued a notice in the Federal Register purporting to postpone the Rule, allegedly pursuant to Section 705 of the APA (the "Delay Notice"). 82 Fed. Reg. at 11,823 (Feb. 27, 2017).

On April 26, 2017, Plaintiffs filed their Complaint. Dkt. No. 1. From that point forward, Plaintiffs diligently sought prompt resolution of their challenge to the Delay Notice. Within two days of the Court's issuance of a Summons, Plaintiffs served the Summons and Complaint on Defendants and their counsel. Dkt. Nos. 5, 6 and 8. Once Defendants consented to this Court's jurisdiction, Plaintiffs took just over a week to file their June 2, 2017 Notice of Motion and Motion for Summary Judgment. Dkt. No. 13. Oral argument on that motion was originally calendared for July 11, 2017. *Id.* However, at the request of Defendants, due to "personal and professional commitments" of Defendants' counsel, Plaintiffs agreed to a 30-day extension of

time for Defendants' opposition and postponement of oral argument until August 22, 2017. Dkt. Nos. 19, 30.

On August 7, 2017, 15 days prior to the date set for oral argument, Defendants published a final rule repealing the Valuation Rule effective September 6, 2017. 82 Fed. Reg. 36,934. Nine days later, Defendants filed a Motion to Postpone Oral Argument to October 3, 2017. Dkt. No. 35. In that motion, Defendants informed the Court of the repeal and represented to the Court that Defendants would file a motion to dismiss this case for lack of subject matter jurisdiction by August 24, 2017, and that pursuant to local rules, the first available hearing date would be October 3, 2017. *Id.* at 1-2. Defendants' motion contended that the argument on Plaintiffs' motion should be postponed for reasons of judicial economy and "to ensure that the Court can determine whether it has subject matter jurisdiction before it addresses the merits." *Id.* at 2. Defendants' Motion to Postpone, however, neglected to inform the Court that:

- The Delay Notice remains operative until at least September 6, 2017;
- Defendants do not claim that the Court lacked subject matter jurisdiction as of August 22, 2017— the date for oral argument that they sought to postpone—or anytime prior to September 6, 2017; and
- Rather, Defendants take the position that the Court should apply the doctrine of prudential mootness—a doctrine not mentioned in any of Defendants' motions or briefing—to decline to decide Plaintiffs' motion prior to September 6, 2017.

On August 17, 2017, the Court denied Defendants' Motion to Postpone. Dkt. No. 39. The following day Defendants filed their Notice of Motion and Motion to Dismiss pursuant to Rule 12(h)(3) of the Rules of Civil Procedure. Dkt. No. 40. The accompanying Notice of Motion states that "Defendants move to dismiss because this case *is* moot and, thus, there *is* no subject matter jurisdiction." *Id*. at 2 (emphasis added).

Defendant Department of Interior's recent reliance on Section 705 of the APA to delay compliance dates of already-effective rules is not confined to the Valuation Rule. On June 15, 2017, Department of Interior's Bureau of Land Management issued a notice delaying certain compliance dates for a rule regarding the prevention of methane waste from oil and natural gas

2

operations on federal and Indian lands which had already been in effect for nearly six months. *See* 82 Fed. Reg. 27,430 (June 15, 2017) (Waste Prevention, Production Subject to Royalties, and Resource Conservation; Postponement of Certain Compliance Dates). Further, sister federal Agencies and Departments have issued similar postponement notices of already-effective rules, making this a recurring practice under the current administration. *See, e.g.*, 82 Fed. Reg. 19,005 (Apr. 25, 2017) (Environmental Protection Agency, Postponement of Certain Compliance Dates for Effluent Limitations Guidelines and Standards for the Steam Electric Power Generating Point Source Category); 82 Fed. Reg. 27,621 (June 16, 2017) (Department of Education, Loan and Grant Programs; Notification of Partial Delay of Effective Dates).

## LEGAL STANDARD

The doctrine of prudential mootness, unlike Article III mootness, is not derived from the Constitution's "case or controversy" requirement. *Fletcher v. United States,* 116 F.3d 1315, 1321 (10th Cir. 1997) (prudential mootness can apply where a controversy is "not constitutionally moot"). Unlike Article III mootness, prudential mootness "is a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration." *Chamber of Commerce of U.S. of Am. v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980). "This concept is concerned, not with the court's power under Article III to provide relief, but with the court's discretion in exercising that power." *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991). This equitable determination completely lies within the court's discretion. *Fletcher,* 116 F.3d at 1321 ("Because the doctrine of prudential mootness is concerned with the court's discretion to exercise its power to provide relief…we review the district court's determination of prudential mootness for an abuse of discretion.").

The Ninth Circuit has not adopted the doctrine of prudential mootness. *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1142 (9th Cir. 2009) (describing the doctrine as having been "adopted by some of our sister circuits"). Other circuits have recognized prudential mootness to apply where "a controversy, not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Chamber of Commerce*, 627 F.2d at 291.

In determining whether prudential mootness applies, courts typically look to whether the court can provide a meaningful remedy. As the D.C. Circuit has noted, a court's power to grant relief "survives discontinuance of the illegal conduct…But the moving party must satisfy the court that relief is needed." *Chamber of Commerce,* 627 F.2d at 292 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953)). Courts can provide relief where "there are present effects that are legally significant." *Jacobus v. Alaska*, 338 F.3d 1095, 1104 (9th Cir. 2003). Further, courts are capable of providing meaningful relief where a party may repeat its illegal conduct. *Sierra Club v. Babbitt*, 69 F. Supp. 2d 1202, 1244 (E.D. Cal. 1999) ("The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."). The Tenth Circuit, elaborating upon the doctrine, explained that "[a] court may refuse to grant relief where it appears that a change in circumstances renders it highly unlikely that the actions in question will be repeated." *Fletcher*, 116 F.3d at 1321.

## ARGUMENT

### I. THE COURT CAN PROVIDE RELIEF

This Court can provide relief to Plaintiffs in the form of a declaratory judgment and vacatur of the Delay Notice. *Sierra Club,* 69 F.Supp.2d at 1244 (rejecting as meritless the defendants' contention of mootness where relief was available to the plaintiffs). Defendants have not provided Plaintiffs with what they seek—namely, vacatur of the illegally-promulgated Delay Notice—and a controversy still exists as to whether the Delay Notice was illegally issued in a manner that violates the APA. *Nat. Res. Def. Council v. Norton*, 2007 WL 14283, at *8 (E.D. Cal. Jan. 3, 2007) ("So long as there is a live controversy and Plaintiffs can obtain meaningful relief from the district court, dismissal on mootness grounds is inappropriate."). Indeed, Defendants have done nothing to cure their offending conduct. *Nat. Res. Def. Council, Inc. v. E.P.A.*, 683 F.2d 752, 768 (3d Cir. 1982) ("[T]he fact that [the agency] provided notice and comment procedures after the postponement does not cure the failure to provide them before the postponement."); *Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 206 (2d Cir. 2004) (agency's mootness argument without merit "primarily because the subsequent notice and comment

addressed questions wholly different from those that would have been addressed in a proceeding to amend the standards' effective date"). Because the "present effects" of the still-operative Delay Notice are "legally significant," a mootness finding is inappropriate here. *Jacobus,* 338 F.3d at 1104. Further, Defendants' Motion to Dismiss is premature, as the Delay Notice remains in effect until September 6, 2017. *Hunt*, 560 F.3d at 1142 ("we are not required to dismiss a live controversy as moot merely because it may become moot in the near future").

**A. Vacatur of the Delay Notice Is an Appropriate Remedy**

Vacating the Delay Notice, which stands today in contravention to the plain language of the APA, is an appropriate remedy. The APA clearly and unequivocally states that a "reviewing court *shall*…hold unlawful and *set aside* agency action…found to be…not in accordance with law." 5 U.S.C. § 706(2) (emphases added). "When a court finds an agency's decision unlawful under the Administrative Procedure Act, vacatur is the standard remedy." *Klamath-Siskiyou Wildlands Center v. National Oceanic and Atmospheric Administration*, 109 F.Supp.3d 1238, 1241 (N.D. Cal. 2015) (hereafter "*Klamath-Siskiyou*") (citations omitted); *see also Pollinator Stewardship Council v. E.P.A.,* 806 F.3d 520, 532 (9th Cir. 2015) (noting that vacatur is typically the proper remedy for a faulty rule).

While the Ninth Circuit does not mandate vacatur, "the Ninth Circuit has only found remand without vacatur warranted by equity considerations in limited circumstances, namely serious irreparable environmental injury." *Ctr. for Food Safety v. Vilsack*, 734 F.Supp.2d 948, 951 (N.D. Cal. 2010); see also *Humane Soc'y v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010) (noting that remand without vacatur only occurs "in rare circumstances"). Courts in the Ninth Circuit apply a common test that looks at "(1) the seriousness of the agency's errors and (2) the disruptive consequences that would result from vacatur." *Klamath-Siskiyou*, 109 F.Supp.3d at 1242 (citing *Cal. Communities Against Toxics v. E.P.A.*, 688 F.3d 989, 992 (9th Cir. 2012) (per curiam)). Thus, for example, where an agency has made less serious procedural errors (such as failing to publish certain documents in the electronic docket of a notice and comment rulemaking, or failing to provide the public with the opportunity to review a provisional report prior to the close of a comment period), and vacatur of the agency action would result in significant public

5

harms such as power blackouts or potential extinction of a species, the court has remanded without vacatur. *Id.* at 1242-43 (citing *Cal. Communities Against Toxics*, 688 F.3d at 993, and *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995)).

Here, by any measure vacatur is the appropriate remedy. The seriousness of Defendants' error could not be greater. Defendants acted under an unsupportable interpretation of the APA, and in so doing effectively repealed a rule without providing the public with any opportunity for notice and comment. *See Nat. Res. Def. Council v. E.P.A.*, 489 F.3d 1364, 1374 (D.C. Cir. 2007) ("The agency's errors could not be more serious insofar as it acted unlawfully, which is more than sufficient reason to vacate the rules."). This was no mere technical defect. Nor is vacatur of the Delay notice going to cause the lights to go off or to put endangered species at risk.

In addition, vacatur will clarify the legal and regulatory landscape surrounding the Delay Notice by rendering this illegally-promulgated agency action legally inoperative and ensuring that it never has future effect. Though Defendants have taken steps to repeal the Valuation Rule effective September 6, 2017, that repeal is subject to judicial review and may itself be vacated. If that occurs, the Delay Notice, or a carbon copy of it, could again become operative when the repeal superseding it no longer exists. Vacating the Delay Notice would "plac[e] the parties in the positions they would have been in if the APA had not been violated," which would clarify the legal landscape in the event of a future challenge to the Rule's repeal. *NRDC,* 683 F.2d at 768. In order to avoid lending legal import to an improperly-promulgated delay, and to prevent its possible resurrection, the Court should vacate the Delay Notice.

### B. Declaratory Judgment Would Vindicate Plaintiffs' Rights and Prevent Recurrence of Defendants' Illegal Conduct

The Court should also declare the presently-effective Delay Notice illegal. The Supreme Court has held that declaratory relief remains appropriate even in the absence of injunctive remedies where the challenged governmental activity "has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974); s*ee also Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007) (when "both

injunctive and declaratory relief are sought but the request for injunctive relief is rendered moot, the case is not moot if declaratory relief would nevertheless provide meaningful relief.").

Further, a declaratory judgment will ensure that Defendants cannot repeat their illegal action with respect to the Valuation Rule and other rules. Declaratory relief is appropriate where a governmental action is "capable of repetition, yet evading review." *Super Tire Eng'g Co.* 416 U.S. at 122 (quoting *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911)); *see also Am. Rivers, Inc. v. NOAA Fisheries*, 2004 WL 2075032, at *3 (D. Or. Sept. 14, 2004) (prudential mootness not appropriate where the agency "has not indicated it intends to change its operations significantly to the extent that a repeat of the challenged actions is highly unlikely"). The governmental action capable of repetition here is Defendants' improper invocation of Section 705 to prematurely repeal an effective rule. The Court should not define the issue any more narrowly, as this would provide Defendants *carte blanche* to repeat their illegal conduct indefinitely, with respect to any number of regulations, and each time evade judicial review.

The D.C. Circuit recognized the need to take a broad view of such agency actions in *Environmental Defense Fund Inc. v. Gorsuch*, where the Environmental Protection Agency ("EPA") delayed implementation of hazardous waste permitting requirements for storage impoundments and incinerators mandated by the Resource Conservation and Recovery Act ("RCRA"). 713 F.2d 802, 808-09. During the course of that legal challenge, EPA withdrew its suspension of the effective date of the at-issue permitting standards, and claimed that on that basis the case was moot. *Id*. at 809-10. The court disagreed, finding that the EPA's action was capable of repetition yet evading review, despite EPA's argument that it was unlikely the agency would "again defer the permit process for existing hazardous waste incinerators and storage impoundments." *Id*. at 811. The court found that this argument "supposes too narrow a formulation of [Plaintiff's] interest in this litigation and of the nature of this dispute" and that the actual issue in the case was EPA's effective suspension of "any promulgated RCRA regulation." *Id*. Similarly here, Defendants' actions including their "conspicuous failure…to foreswear future deferrals without notice or comment, sufficiently show that such conduct may reasonably be expected to occur again." *Id*.

7

To determine whether an action "may be repeated and yet evade review" courts evaluate whether: "(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329 (9th Cir. 1992). As to the first prong, Defendants retain complete control over the duration of an illegal Section 705 postponement—it will only be in place for the amount of time it takes the agency to complete the notice-and-comment process for repealing the improperly-postponed rule. Here, the Delay Notice was in effect for less than six months, which in many cases will be too short a window of time to allow full litigation. *See id.* at 1329-30 ("The regulation challenged was in effect for less than one year, making it difficult to obtain effective judicial review."); *Humane Soc'y of U.S. v. E.P.A.*, 790 F.2d 106, 113 (D.C. Cir. 1986) ("The one-year life span of the permits simply did not allow completion of the process prior to their demise."). Second, Defendants' actions provide every indication that they will repeat (and in fact have already repeated) their violation of Section 705 in a manner that harms Plaintiffs. In fact, a challenge to the Interior Department's illegal invocation of Section 705 to "postpone" certain provisions of a regulation governing waste from oil and gas operations is currently pending before this Court. 82 Fed. Reg. 27,430; *State of California et al v. U. S. Bureau of Land Management et al.*, Case No. 3:17-cv-03804-EDL.

## II. EQUITABLE CONSIDERATIONS DISFAVOR A MOOTNESS FINDING

Prudential mootness is a "facet of equity." *Nasoordeen v. F.D.I.C.*, 2010 WL 1135888 at *6 (C.D. Cal., Mar. 17, 2010). Here, equitable considerations counsel against applying the doctrine. First, concerns regarding judicial administration weigh against a finding of mootness because this Court has already expended resources adjudicating this matter. *Chamber of Commerce*, 627 F.2d at 291. Thus, abandoning the case at this stage will "prove more wasteful than frugal." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191-92 (2000).

Further, "there is a continuing public interest in determining the appropriate legal principles" governing Defendants' misinterpretation of the APA, which "transcends the particular" Rule at issue here. *Joint Bd. of Control of Flathead, Mission & Jocko Irr. Districts v. United States*, 832 F.2d 1127, 1130 (9th Cir. 1987); *see also W. T. Grant Co.*, 345 U.S. at 632 (recognizing that "a

8

public interest in having the legality of the practices settled… militates against a mootness conclusion"). The Supreme Court has noted that the "interest in preventing litigants from attempting to manipulate the Court's jurisdiction" to insulate their actions from judicial review counsels against a finding of mootness. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000). Here, Defendants first unlawfully repealed the Rule through issuance of the Delay Notice without notice and comment, then perpetuated the effects of their illegal act by moving to permanently repeal the Rule, and now argue the Court should exercise its discretion to forego ruling on their initial disregard for the APA. Defendants should not be allowed to benefit from this transparent strategy to evade judicial review.

Finally, inherent in equity is a "basic sense of fairness," which clearly mitigates against a prudential mootness finding here. *United States v. Paradise* 480 U.S. 149, 192 (1987). The interest of Plaintiffs and the public in not allowing existing or future unlawful delays that impact royalties due pursuant to the Valuation Rule, including for use in funding public education,[1] far outweighs the administrative costs that might be avoided by the Court declining to rule on prudential mootness grounds.

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court grant Plaintiffs' Motion for Summary Judgment (Dkt. No. 13) and vacate the Delay Notice.[2]

---

[1] In New Mexico, for example, pursuant to statute, those royalty payments are distributed to the state's public school fund. *See* NMSA 1978, § 22-8-34(A) (providing that all of New Mexico's royalty payments are directed at educational purposes, and most of those funds "shall be distributed to the public school fund.").

[2] Filed herewith is an updated Proposed Order Granting Plaintiffs' Motion for Summary Judgment.

Dated: August 25, 2017

Respectfully submitted,

XAVIER BECERRA
Attorney General of California

/s/ Mary S. Tharin
MARY S. THARIN
DAVID ZONANA
*Attorneys for People of the State of California*

HECTOR BALDERAS
Attorney General of New Mexico

/s/ Ari Biernoff
ARI BIERNOFF
BILL GRANTHAM
*Attorneys for the State of New Mexico*