UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAVIER BECERRA, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,<br><br>　　　　Defendants. | Case No.17-cv-02376-EDL<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 13 |

In this case, Plaintiffs People of the State of California, ex rel. Xavier Becerra, Attorney General, and People of the State of New Mexico, ex rel. Hector Balderas, Attorney General, seek a declaration that that the action of Defendants United States Department of the Interior ("DOI"), Office of Natural Resources Revenue ("ONRR"), Secretary of the Interior Ryan Zinke, and Director of the ONRR Gregory Gould violated the Administrative Procedure Act ("APA") and an injunction requiring Defendants to vacate the postponement of and reinstate the Consolidated Federal Oil & Gas and Federal & Indian Coal Valuation rule at 81 Fed. Reg. 43,338 (July 1, 2016) (the "Rule").  On June 2, 2017, Plaintiffs moved for summary judgment.  Dkt. No. 13.  Defendants opposed on July 20, 2017, and Plaintiffs replied on August 4, 2017.  Dkt. Nos. 26 & 27.  On August 22, 2017, the Court heard argument on Plaintiffs' motion.  For the reasons stated below, the Court GRANTS Plaintiffs' motion for summary judgment.

**I.     FACTUAL BACKGROUND**

In 2007, ONRR's Subcommittee on Royalty Management issued a report with several recommendations regarding mineral revenue collection from Federal and Indian lands.  Dkt. No. 15-9, Ex. 9, 90 Fed. Reg. 608.  ONRR engaged in a rulemaking process and issued two advanced notices of proposed rulemaking in May 2011.  Dkt. No. 15-7, 76 Fed. Reg. 30,878; Dkt. No. 15-8,

76 Fed. Reg. 30,881. One advanced notice requested comments and suggestions before proposing changes to the regulations governing the valuation of oil and gas produced from Federal leases for royalty calculation. Dkt. No. 15-7, 76 Fed. Reg. 30,878. The other requested comments and suggestions before proposing changes to the regulations governing the valuation of coal produced from Federal and Indian leases, also used to calculate royalties. Dkt. No. 15-8, 76 Fed. Reg. 30,881. After receiving responses to the call for comments and conducting six public workshops, ONRR issued a proposed rule entitled "Consolidated Federal Oil & Gas and Federal & Indian Coal Valuation Reform" (the "Proposed Rule") on January 6, 2015. Dkt. No. 15-9, Ex. 9, 90 Fed. Reg. 608. Approximately eighteen months later, on July 1, 2016, ONRR issued the final rule regarding the valuation of oil and gas production from Federal leases and coal production from Federal and Indian leases (the "Rule"). Dkt. No. 15-10, Ex. 10, 81 Fed. Reg. 43,338. ONRR set forth an effective date of January 1, 2017 for the Rule. Id. ONRR described the purpose of the Rule as follows:

> (1) to offer greater simplicity, certainty, clarity, and consistency in product valuation for mineral lessees and mineral revenue recipients; (2) to ensure that Indian mineral lessors receive the maximum revenues from coal resources on their land, consistent with the Secretary's trust responsibility and lease terms; (3) to decrease industry's cost of compliance and ONRR's cost to ensure industry compliance; and (4) to provide early certainty to industry and to ONRR that companies have paid every dollar due.

Id. ONRR estimated that the Rule would increase royalty collections by between $71.9 million and $84.9 million. Id. at 43,359.

On December 29, 2016, various coal and oil industry groups challenged the Rule in three lawsuits filed in the United States District Court for the District of Wyoming, contending that the Rule was arbitrary and capricious. Dkt. No. 13-1, Mot. at 5. The Rule took effect on January 1, 2017, although first reports and royalty payments under the Rule were not due until February 28, 2017. Dkt. No. 26-1, Gould Decl. ¶ 4.

Between October 17, 2016 and December 15, 2016, ONRR conducted eleven training sessions on the Rule. Id. ¶ 4. According to Gould, the trainings revealed some confusion about the Rule. Id. During this training, ONRR received requests for guidance about how to comply

with the Rule. Id. ¶ 5. ONRR responded that it could not provide guidance before the January 1, 2017 effective date and could not guarantee guidance by the end of February. Id.

On February 17, 2017, the plaintiffs in the District of Wyoming suits sent a letter to ONRR which "ask[ed] ONRR to postpone the implementation of the Rule under 30 U.S.C. § 705 of the Administrative Procedure Act." Id. ¶ 6. On February 22, 2017, Deputy Director of ONRR James D. Steward issued a letter stating that "[i]n light of the pending litigation, ONRR has decided to postpone the effective date of the 2017 Valuation Rule until the litigation is resolved pursuant to Section 705 of the Administrative Procedure Act." Dkt. No. 15-2, Ex. 2 at 1. The letter stated that the effective date of the Rule was January 1, 2017, with the first reports due on February 28, 2017. Id. According to the letter, those affected by the Rule "should continue to value, report, and pay royalties under the rules that were in effect prior to January 1, 2017," i.e., under the old regulation that the Rule replaced. Id. ONRR also published an announcement on its website stating, "Attention: The 2017 Valuation Rule has been stayed!" Dkt. No. 26-1, Gould Decl., Ex. 4.

On February 27, 2017, ONRR issued a notice in the Federal Register which postponed the Rule. Dkt. No. 15-12, Ex. 12, 82 Fed. Reg. 11,823. Referring to three separate petitions challenging the Rule in the District of Wyoming, ONRR wrote that "[i]n light of the existence and potential consequences of the pending litigation, ONRR has concluded that justice requires it to postpone the effectiveness of the 2017 Valuation Rule pursuant to 5 U.S.C. 705 of the Administrative Procedure Act, pending judicial review." Id.

On March 23, 2017, ONRR moved to stay the three cases in the District of Wyoming because they were developing a notice of proposed rulemaking to repeal the Rule. Dkt. No. 15-3, Ex. 3. On April 4, 2017, ONRR issued an advance notice of proposed rulemaking. Dkt. No. 15-14, Ex. 14, 82 Fed. Reg. 16,325. In it, ONRR sought comments and suggestions about whether revisions to the Rule were necessary and, if so, what revisions. Id. On the same day, ONRR proposed to repeal the Rule. Dkt. No. 15-13, Ex. 13, 82 Fed. Reg. 16,323. On April 27, 2017, the district court granted the requested stays. Dkt. No. 15-5, Ex. 5. On August 7, 2017, ONRR published a final rule repealing the Rule, with an effective date of September 6, 2017 ("Repeal Rule"). Dkt. No. 35.

## II. PROCEDURAL HISTORY

On April 26, 2017, Plaintiffs filed a complaint seeking declaratory and injunctive relief. Dkt. No. 1. Plaintiffs alleged that Defendants' actions violated 5 U.S.C. sections 553, 705, and 706, and sought a declaratory judgment that Defendants acted arbitrarily, capriciously, contrary to law, abused their discretion, and failed to follow the required procedure in their delay of the Rule. Id. ¶¶ 36-45; p. 9. Plaintiffs also requested that the Court vacate Defendants' postponement of the Rule, enjoin Defendants to reinstate the Rule, award Plaintiffs their costs, expenses, and reasonable attorneys' fees, and award such other relief as the Court deems just and proper. Id. at 9-10.

On June 2, 2017, Plaintiffs moved for summary judgment. Dkt. No. 13. Plaintiffs argued that ONRR's postponement of the Rule violated the APA in two respects. First, Plaintiffs argued that ONRR incorrectly invoked Section 705 of the APA to postpone the effectiveness of the Rule after it had already gone into effect, contrary to the plain language of the statute. Second, Plaintiffs contended that ONRR effectively repealed the Rule without soliciting input from the public as required by the APA's provision for notice and comment. Id.

Oral argument was scheduled on July 11, 2017, pursuant to the normal briefing and hearing schedule under the local rules. L.R. 7-2(a). However, Defendants requested a thirty-day extension of Defendants' time to file their opposition, and postponement of oral argument until August 22, 2017 due to "personal and professional commitments" of their counsel. Plaintiffs agreed to the request, apparently as a professional courtesy. Guidelines for Professional Conduct, Northern District of California, Section 3.

On July 20, 2017, Defendants opposed the motion. Dkt. No. 26. They responded that ONRR's postponement was authorized under Section 705. Defendants also contended that the motion is premature because the Court has not yet issued a case management schedule and Defendants have not had sufficient time to produce the administrative record. Id. Defendants argued that the motion should be denied or dismissed as premature, or that consideration of it be stayed. Id.

On August 4, 2017, Plaintiffs replied. Dkt. No. 27. Plaintiffs argued that the meaning of

4

1  effective date in section 705 is clear and does not authorize an agency to postpone a rule that is

2  already in effect. Id., Reply at 1. Further, Plaintiffs contended that Defendants have not pointed

3  to any need for examination of the administrative record to decide the purely legal question

4  presented. Id.

5  On June 14, 2017, the States of Washington, Oregon, Maryland, and New York moved to

6  file an *amicus curiae* brief in support of Plaintiffs. Dkt. No. 20. The Court granted their motion

7  on June 16, 2017. Dkt. No. 21. *Amici* States argued that section 705 of the APA does not allow

8  the retroactive suspension of a rule that has already gone into effect. Dkt. No. 20, Br. at 3.

9  Furthermore, *amici* States contended that the suspension under section 705 was invalid because

10  the suspension was pending ultimate repeal of the Rule rather than pending judicial review of the

11  Rule. Id. at 4. In addition, *amici* States argued that ONRR's actions undermine the APA's goal of

12  fostering the stability and predictability of federal regulation. Id. at 5.

13  On August 16, 2017, only six days before the hearing on the motion for summary

14  judgment and nine days after the issuance of the Repeal Rule (also more than four months after

15  ONRR formally proposed repeal of the Rule), Defendants filed an administrative motion to

16  postpone oral argument to October 3, 2017. In that motion, Defendants informed the Court that

17  they intended to file a motion to dismiss based on Article III mootness due to the repeal.

18  Defendants' motion violated the requirement of Local Rule 6-1(b) requiring that a request to

19  extend a court hearing date be filed at least fourteen days in advance, so as not to disrupt the

20  Court's and the parties' schedule, especially once briefing was complete (also fourteen days before

21  the hearing), and the Court began preparing for the hearing.

22  Plaintiffs opposed the motion to postpone the hearing as violating the local rules and

23  prejudicing them by prolonging the length of what they viewed as an illegal and harmful

24  postponement of the Rule. On August 17, 2017, the Court denied the requested continuance as

25  contrary to the Local Rule and inefficient because the Court had already fully prepared for the

26  long-scheduled hearing on summary judgment.

27  On August 18, 2017, Defendants filed their motion to dismiss based solely on Article III

28  mootness, noticed to be heard on October 3, 2017. Defendants did not move to shorten time for

1    the hearing as permitted under Local Rule 6-1.  Their notice of motion stated that this case is moot

2    in the present tense.  Dkt. No. 39 at 2.

3        At the hearing on summary judgment, however, after the Court asked about the impact of

4    the September 6, 2017 effective date of the Repeal Rule, Defendants stated that because the

5    postponement of the Rule remained operative until the Repeal Rule took effect on September 6,

6    2017, prudential mootness rather than Article III mootness applied until September 6, 2017, when

7    the case would become moot under Article III.

## III.  LEGAL STANDARD

9        Summary judgment shall be granted if "the pleadings, discovery and disclosure materials

10   on file, and any affidavits show that there is no genuine issue as to any material fact and that the

11   movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(c).  Material facts are

12   those which may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

13   242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a

14   reasonable jury to return a verdict for the nonmoving party.  Id.  The court must view the facts in

15   the light most favorable to the non-moving party and give it the benefit of all reasonable

16   inferences to be drawn from those facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

17   U.S. 574, 587 (1986).  The court must not weigh the evidence or determine the truth of the matter,

18   but only determine whether there is a genuine issue for trial.  Balint v. Carson City, 180 F.3d

19   1047, 1054 (9th Cir. 1999).

20       A party seeking summary judgment bears the initial burden of informing the court of the

21   basis for its motion, and of identifying those portions of the pleadings and discovery responses

22   that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477

23   U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must

24   affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

25   party.  On an issue where the nonmoving party will bear the burden of proof at trial, the moving

26   party can prevail merely by pointing out to the district court that there is an absence of evidence to

27   support the nonmoving party's case.  Id.  If the moving party meets its initial burden, the opposing

28   party "may not rely merely on allegations or denials in its own pleading;" rather, it must set forth

"specific facts showing a genuine issue for trial." See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250.  If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

**IV.   DISCUSSION**

   **A.   Prudential Mootness**

ONRR published a final rule repealing the Rule, effective as of September 6, 2017.  Defendants moved to dismiss this case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3).  Subject matter jurisdiction presents a "threshold question[] which must be decided before [the Court] address[es] the merits." Am. Rivers v. Nat'l Marine Fisheries Serv., 126 F.3d 1118, 1123 (9th Cir. 1997); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884)).  An action is moot when the issues presented are no longer live, and the mootness inquiry asks whether there is anything left for the court to do. Western Oil & Gas Ass'n v. Sonoma Cnty., 905 F.2d 1287, 1290 (9th Cir. 1990).

Here, the repeal of the Rule is not effective until September 6, 2017.  At the hearing, Defendants acknowledged that the postponement under section 705 of the APA is operative in their view until September 6, 2017, so the case is (at most) prudentially moot now, and not moot under Article III until September 6, 2017.

The Ninth Circuit has not adopted the doctrine of prudential mootness outside of the bankruptcy context. Maldonado v. Lynch, 786 F.3d 1155, 1161 n.5 (9th Cir. 2015) (en banc). Cf. Hunt v. Imperial Merch. Servs., Inc., 560 F.3d 1137, 1142 (9th Cir. 2009) (declining to dismiss an appeal as "anticipatorily moot" because it presented an issue that often arises in district courts but evades appellate review).  Therefore, this Court declines to apply it.

Even if the doctrine of prudential mootness were to apply, however, the motion is not prudentially moot.  Prudential mootness is an equitable doctrine, under which the Court should exercise its discretion, Fletcher v. United States, 116 F.3d 1315, 1321 (10th Cir. 1997), and

7

generally depends on whether the court can grant "meaningful relief." Hunt, 560 F.3d at 1142 (quoting S. Utah Wilderness All. v. Smith, 110 F.3d 724, 727 (10th Cir. 1997)). See also Marcavage v. Nat'l Park Serv., 666 F.3d 856, 862 n.1 (3d Cir. 2012) (explaining that the "key inquiry in a prudential mootness analysis is 'whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief'") (quoting Int'l Broth. of Boilermakers v. Kelly, 815 F.2d 912, 915 (3d Cir. 1987)); Penthouse Int'l, Ltd. v. Meese, 939 F.2d 1011, 1019 (D.C. Cir. 1991) ("This concept is concerned, not with the court's power under Article III to provide relief, but with the court's discretion in exercising that power."). As an equitable doctrine, the analysis of whether the motion is prudentially moot is guided by a "sense of basic fairness." United States v. Paradise, 480 U.S. 149, 192 (1987). In other circuits that recognize the prudential mootness doctrine, a principle concern when determining if the court can provide meaningful relief is whether it is likely that the challenged conduct will be repeated. See Fletcher, 116 F.3d at 1321.

As remedies, Plaintiffs seek a declaration that Defendants violated the APA by postponing the effective date of the Rule and vacatur of the postponement. With respect to declaratory relief, Plaintiffs' argument is well taken that leaving the postponement in place casts a "continuing and brooding presence" over the parties and any subsequent challenge that might be made to the repeal of the Rule. Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122 (1974). Declaratory relief provides the necessary clarity and certainty that Defendants acted in violation of the APA when they issued the postponement if repeal of the Rule is overturned at some point in the future and the former rule is reinstated.

Declaratory relief is an appropriate and meaningful remedy for the additional reason that Defendants' approach to repealing the Rule is sufficiently likely to be repeated without being subject to judicial review to cut against application of prudential mootness.[1] The likelihood that one or more Defendants will use the same strategy to effectively repeal regulations that California has a stake in maintaining in effect without statutory authority after their effective date is not

---

[1] The Court need not decide whether that threshold would be crossed if Article III mootness applied.

8

1  remote.  An agency within the Department of the Interior—the Bureau of Land Management—is
2  a defendant in another case that is currently before this Court in which the plaintiffs are
3  challenging the Bureau of Land Management's delay of the Waste Prevention, Production Subject
4  to Royalties and Resources Conservation rule (81 Fed. Reg. 83,008) under Section 705 of the
5  APA.  See State of California et al. v. United States Bureau of Land Management et al., 17-cv-
6  3804-EDL.  The possibility that Defendants will repeat their conduct is an appropriate factor for
7  the Court to consider when assessing prudential mootness.  See Fletcher, 116 F.3d at 1321.

Defendants have shown through the circumstances of this case that they can move quickly to engage in notice and comment rulemaking to repeal an unwanted regulation after postponing its implementation after the effective date, thereby frustrating those aggrieved by the interim repeal from obtaining a judicial ruling on the misuse of Section 705.  See Greenpeace Action v. Franklin, 14 F.3d 1324, 1329-30 (9th Cir. 1992) ("The regulation challenged was in effect for less than one year, making it difficult to obtain effective judicial review."); Humane Soc'y of the United States v. Envt'l Protection Agency, 790 F.2d 106, 113 (D.C. Cir. 1986) ("The one-year life span of the permits simply did not allow completion of the process prior to their demise.").  The significance of the possibility of repeated conduct is highlighted by Defendants' "conspicuous failure . . . to foreswear future deferrals without notice or comment." Envt'l Defense Fund, Inc. v. Gorsuch, 712 F.2d 802, 811 (D.C. Cir. 1983).  See also American Rivers, Inc. v. NOAA Fisheries, 2004 WL 2075032, at *3 (D. Or. Sept. 14, 2004) (concluding that the defendants had not shown an intention to abandoned the challenged conduct "to the extent that a repeat of the challenged actions is highly unlikely").

An inherent aspect of the application of an equitable doctrine is whether declaratory relief is necessary to achieve basic fairness.  See Paradise, 480 U.S. at 192.  As indicated in the procedural history recited above, Defendants have repeatedly used procedures to delay the decision on Plaintiffs' summary judgment motion, including delaying the hearing on this motion for five weeks and then violating the local rules by filing a last minute administrative motion to postpone argument for six more weeks until October 3, 2017.  If their belated request had been granted, the resulting delay would have had the effect of putting off the hearing and decision on

the motion until after the Repeal Rule went into effect on September 6, 2017, and the case became moot under Article III. Indeed, in the brief in support of their motion to dismiss, filed on August 18, 2017 and noticed for a hearing on October 3, 2017, Defendants argued for dismissal solely on the basis of Article III mootness, yet at the August 22, 2017 hearing on the motion for summary judgment, Defendants acknowledged that only prudential mootness (a doctrine not adopted by the Ninth Circuit) was currently at issue. When asked why the motion to dismiss had not addressed prudential mootness, Defendants pointed to the hearing date. The omission of prudential mootness in the motion to dismiss was apparently based on the self-fulfilling prophecy that delay in ruling on the merits until after the effective date of the Repeal Rule would render the issue of prudential mootness itself moot and divest this Court of jurisdiction.

Finally, as the Ninth Circuit has repeatedly held, "there is a continuing public interest in determining the appropriate legal principles" by which Defendants promulgate rules and regulations affecting the value of revenue generated from coal produced from Federal and Indian leases. See Joint Bd. of Control of Flathead, Mission & Jacko Irrigation Dists. v. United States, 832 F.2d 1127, 1130 (9th Cir. 1987) (continuing public interest in resolving the Bureau of Indian Affairs' water distribution strategy). See also United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953) (there is a "public interest in having the legality of practices settled" where the challenged conduct violated the antitrust laws and is capable of being repeated).

Accordingly, a meaningful remedy is available in the form of declaratory relief and the motion would not be prudentially moot even if that were a viable doctrine in the Ninth Circuit outside of the bankruptcy context. As set forth in the later discussion on remedies, the Court declines to also issue vacatur under these circumstances.

**B.     Standard of Review**

Defendants argue that the APA may set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law," 5 U.S.C. § 706, focusing on the standard of review under the first clause regarding arbitrary action and abuse of discretion on matters within the agency's discretion.

10

Defendants contend that review under this standard "is narrow, and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43 (1983). They argue that an agency's decision can be set aside "only if the agency relied on factors Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Earth Island Inst. v. U.S. Forest Serv., 697 F.3d 1010, 1013 (9th Cir. 2012) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7 (2008)).

That standard, however, is not applicable to actions short of statutory right or taken in violation of legally required procedures. To the contrary, section 706 provides that, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). The "arbitrary and capricious" standard forms a separate basis to set aside agency action, 5 U.S.C. § 706(2)(A), and it is that standard which Motor Vehicle Manufacturers Association characterized as narrow. 463 U.S. at 42-43. Similarly, Defendants rely on a portion of Earth Island Institute in which the court cites Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir. 2008) for exposition of the arbitrary and capricious standard. See also Price v. Stevedoring Servs. of Am., Inc., 697 F.3d at 825-26 (holding that litigating position of Director of Office of Workers' Compensation Programs in interpreting Longshore Act was not entitled to Chevron deference where Director did not adopt his litigating positions through any relatively formal administrative procedure, but through internal decision-making not open to public comment or determination, and there was no other indication that Congress intended Director's litigating positions to carry force of law).

As Plaintiffs persuasively argue, the ONRR's decision to postpone the Rule is not entitled to deference. Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842 (1984) held that "the court must first give effect to the unambiguously expressed intent of Congress" when reviewing an agency's interpretation of a statute. Under United States v. Mead Corp., 533 U.S. 218, 226-27 (2001) and Price v. Stevedoring Servs. of Am., Inc., 697 F.3d 820, 826 (9th Cir.

11

1    2012), Chevron deference is warranted only when an agency is exercising authority delegated to it
2    by Congress to administer a particular statute, and that Congress has not delegated ONRR
3    authority to administer the APA.  By contrast, Motor Vehicle Manufacturers Association
4    addressed agency action delegated to that agency by the Motor Vehicle Safety Act.  463 U.S. 29.
5    Similarly, in Earth Island Institute, the Ninth Circuit held that the Forest Service is entitled to
6    deference as to its interpretation of its own forest plans unless that interpretation is plainly
7    inconsistent with the plan.  697 F.3d at 1013.
8        The underlying dispute here, however, centers upon ONRR's application of section 705 of
9    the APA.  Under Mead Corp., "administrative implementation of a particular statutory provision
10   qualifies for Chevron deference when it appears that Congress delegated authority to the agency
11   generally to make rules carrying the force of law, and that the agency interpretation claiming
12   deference was promulgated in the exercise of that authority."  533 U.S. at 226-27.  Defendants
13   have not pointed to any authority delegating ONRR authority to interpret section 705 of the APA.
14   Thus, Defendants have failed to show that ONRR's interpretation of section 705 of the APA is
15   entitled to deference.

### C. ONRR's Application of Section 705

Section 705 of the APA provides:

> When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

Plaintiffs argue that postponing the effectiveness of the Rule after it had gone into effect contradicts the plain language of the statute.  Plaintiffs point to the only decision on this issue, Safety-Kleen Corp. v. EPA, 1996 U.S. App. LEXIS, *2 (D.C. Cir. Jan. 19, 1996), which held that section 705 does not permit an agency to suspend a promulgated rule without notice and comment.

    Defendants contend instead that the deadline for invoking agency postponement authority under the first sentence of section 705 is not the effective date, but what they term the "compliance

1    date" of February 28, 2017 at which time the first reports and royalty payments were due.
2    Defendants argue that Plaintiffs' interpretation of effective date makes little practical sense and
3    would frustrate Congressional intent. They contend that in many instances, an agency will not
4    have time to exercise its § 705 authority after a lawsuit is filed and before the challenged rule's
5    stated effective date. Defendants do not cite a part of the Rule in which the "compliance date" is
6    designated, but instead rely on ONRR Director Gould's recent declaration to characterize
7    February 28, 2017 as the compliance deadline. Dkt. No. 26, Gould Decl. ¶ 4.

8    Defendants also argue that "compliance dates" are the "dates with teeth," and section 705
9    is meant to allow an agency to maintain the status quo pending judicial review. At the hearing,
10   however, Defendants acknowledged that the Rule began to require compliance when it went into
11   effect on the effective date "in a buildup" to the compliance date of February 28, 2017. Thus,
12   rather than being toothless as of the effective date and only suddenly acquiring a set of teeth as of
13   the February compliance date, in actuality the Rule imposed compliance obligations starting on its
14   effective date of January 1 that increased over time but did not abruptly commence at the end of
15   February.

16   Plaintiffs respond that Defendants' attempt to read additional language into the statute to
17   permit them to delay a rule after its effective date, but before the passing of compliance deadlines,
18   fails. As the Supreme Court cautioned in Bates v. United States, 522 U.S. 23, 29 (1997), courts
19   "ordinarily resist reading words or elements into a statute that do not appear on its face." See also
20   Stanton Rd. Assocs. v. Lohrey Enters., 984 F.2d 1015, 1020 (9th Cir. 1993) (stating that the court
21   did not have the power to read into the statute words not explicitly inserted by Congress).
22   Plaintiffs also argue that Defendants' broad reading of "effective date" runs counter to the overall
23   scheme of the APA, which provides an orderly process of notice and comment rulemaking,
24   including the date a final rule takes effect, and limits the agency's authority to postpone that date
25   once it has passed so as not to allow the agency to bypass the notice and comment requirements
26   for repeal.

27   As the Court of Appeals for the District of Columbia explained:
28        Upon consideration of the motion of intervenors to vacate

> administrative stay, the responses thereto and the reply, it is ORDERED that the motion be granted. Respondent improperly justified the stay based on 5 U.S.C. § 705 (1994). That statute permits an agency to postpone the effective date of a not yet effective rule, pending judicial review. It does not permit the agency to suspend without notice and comment a promulgated rule, as respondent has attempted to do here. If the agency determines the rule is invalid, it may be able to take advantage of the good cause exception, 5 U.S.C. § 553(b).

Safety-Kleen Corp. v. EPA, 1996 U.S. App. LEXIS, *2-3 (Jan. 19, 1996). The Court finds that reasoning persuasive. The plain language of the statute authorizes postponement of the "effective date," not "compliance dates." 5 U.S.C. § 705. Effective and compliance dates have distinct meanings. See Silverman v. Eastrich Multiple Inv'r Fund, L.P., 51 F.3d 28, 31 (3d Cir. 1995) ("The mandatory compliance date should not be misconstrued as the effective date of the revisions."); Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency, 683 F.2d 752, 762 (stating an effective date is "an essential part of any rule: without an effective date, the agency statement could have no future effect, and could not serve to implement, interpret, or prescribe law or policy") (internal quotation marks omitted).

Furthermore, *amici* States persuasively argue that because ONRR sought and secured stays in the cases challenging the Rule in the District of Wyoming, ONRR improperly invoked section 705 to suspend the effective date of the Rule pending its ultimate repeal rather than pending judicial review as required by section 705. The announced purpose of the postponement was that "[i]n light of the pending litigation, ONRR has decided to postpone the effective date of the 2017 Valuation Rule until the litigation is resolved pursuant to section 705 of the APA." Dkt. No. 15-2, Ex. 2 at 1 (emphasis added). Thus, ONRR acknowledged the other limit of its section 705 authority to postpone in addition to "effective date," i.e., "pending judicial review," yet ONRR blocked judicial review by obtaining a stay in the Wyoming litigation to pursue the Repeal Rule instead.

Even if the Court could ignore the plain language of the statute, Defendants' policy argument that the Court should construe section 705 to include "compliance dates" because section 705 is meant to allow an agency to maintain the status quo pending judicial review is unpersuasive. Defendants' position undercuts regulatory predictability and consistency. See

Price, 697 F.3d at 830 (formal rulemaking exists in order to provide "notice and predictability to regulate parties"). After nearly five years of carrying out the requisite rulemaking milestones, as well as public workshops, and trainings leading up to the effective date, ONRR's suspension of the Rule did not merely "maintain the status quo," but instead prematurely restored a prior regulatory regime. In addition, while the "effective date" is clearly set forth in the formal announcement of the final Rule, the same is not true of dates that ONRR subsequently labels "compliance dates" after the Rule takes effect and then equates to effective dates. Defendants' interpretation would allow the agency broad latitude to delay implementation long after a rule was formally noticed to the public as taking effect by characterizing other later dates as compliance dates and thereby retroactively abrogating the published effective date. Not only is there no support in the language of the statute for this interpretation, but ONRR cites no precedent or legislative history to support a Congressional delegation of such broad authority to bypass the APA repeal process for a duly promulgated regulation.

Similarly, Defendants' argument that recent questions and complaints raised new issues justifying the postponement does not justify acting outside of statutory authority. Moreover, entities which would be subject to the Rule had copious opportunities to raise objections and concerns about implementation during the lengthy notice and comment period. Indeed, as Defendants acknowledged at oral argument, many, if not all, of the same objections raised by the plaintiffs challenging the Rule in the District of Wyoming were advanced during the five-year long rulemaking process. Presumably, they did so in light of the requirement to exhaust their administrative remedies. Lands Council v. McNair, 629 F.3d 1070, 1076 (9th Cir. 2010) ("A party forfeits arguments that are not raised during the administrative process.").

Finally, Defendants' argument that construing the effective date literally and not also as the "compliance date" can in some circumstances unduly shorten the agency's opportunity to postpone a rule's impact when faced with litigation is unpersuasive in light of the additional provision of section 705, which allows the agency to seek broad relief from the reviewing court. See 5 U.S.C. § 705 ("On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal

1  from or on application for certiorari or other writ to a reviewing court, may issue all necessary and
2  appropriate process to postpone the effective date of an agency action <u>or to preserve status or</u>
3  <u>rights pending conclusion of the review proceedings</u>.") (emphasis added).  Thus, ONRR could
4  have asked the court to stay the implementation of the regulation, instead of unilaterally issuing its
5  own "stay," as it characterized the postponement on its website.

**1.    Relationship between Section 705 and Section 553(d) of the APA**

7       At the hearing, Defendants argued that section 705 does not incorporate or cross reference
8  effective date under section 553(d) of the APA, as section 705 applies to all agency action rather
9  than just rulemaking.  <u>See</u> 5 U.S.C. § 705 (allowing an agency to postpone "action taken by it"); 5
10 U.S.C. § 551(13) (defining agency action to include "the whole or a part of an agency rule, order,
11 license, sanction, relief, or the equivalent or denial thereof, or failure to act").  Defendants make
12 the leap that the definition of effective date in section 705 must therefore be more capacious than
13 the definition of effective date in section 553(d).
14      Their argument is not persuasive.  While section 705 allows the postponement of the
15 effective date of a broader range of agency actions than a complete rule, such as a part of a rule or
16 a license, that does not alter the plain meaning of "effective date."

**D.    Compliance with Notice-and-Comment Requirements**

18      Plaintiffs and *amici* States argue that ONRR also violated the APA's notice-and-comment
19 requirements by effectively repealing the Rule without allowing the public an opportunity for
20 meaningful comment.  Sections 553(b) and (c) of the APA set forth the notice-and-comment
21 requirements for agency "rule making."  5 U.S.C. § 553.  "Rule making means agency process for
22 formulating, amending, or repealing a rule."  5 U.S.C. § 551(5).  Citing <u>Environmental Defense</u>
23 <u>Fund, Inc. v. Gorsuch</u>, 713 F.2d 802, 814 (D.C. Cir. 1983), Plaintiffs contend that ONRR's action
24 "amounted in substance to a suspension of a regulation," which should have thus included notice
25 and comment.
26      In <u>Environmental Defense Fund, Inc.</u>, the court considered a challenge to the
27 Environmental Protection Agency's Administrator's decision to defer processing of operating
28 permits for hazardous waste incinerators and storage impoundments.  713 F.2d 802.  The court

held that the Environmental Protection Agency's deferral of the permit process constituted a suspension of a regulation without notice or comment in violation of the APA. Id. at 818.

Defendants respond that section 705 does not refer to notice-and-comment requirements. Citing Hoctor v. U.S. Department of Agriculture, 82 F.3d 165, 167 (7th Cir. 1996), they also argue that notice and comment is time-consuming, which would make effective use of section 705 difficult in some situations. Defendants rely on Sierra Club v. Jackson, 833 F. Supp. 2d 11, 28 (D.D.C. 2012), which held that the section 705 delay notice did not constitute substantive rulemaking. However, in Sierra Club, unlike here, the agency properly invoked section 705 before the rule's effective date. Therefore, the postponement of the rule there was not effectively a repeal, as here. The APA does not permit an agency to "guide a future rule through the rulemaking process, promulgate a final rule, and then effectively repeal it, simply by indefinitely postponing its operative date. The APA specifically provides that the repeal of a rule is rulemaking subject to rulemaking procedures." Nat. Res. Def. Council, Inc., 683 F.2d at 762.

Furthermore, the policy underlying the statutory requirement of notice-and-comment is equally applicable to repeal of regulations as to their adoption. As Consumer Energy Council of Am. v. Fed. Energy Regulatory Comm'n, 673 F.2d 425, 446 (D.C. Cir. 1982) observed: "The value of notice and comment prior to repeal of a final rule is that it ensures that an agency will not undo all that it accomplished through its rulemaking without giving all parties an opportunity to comment on the wisdom of repeal." By acting outside its statutory authority to in effect repeal the Rule in February of 2017 without allowing the public to comment, ONRR improperly put the cart before the horse. While Defendants argue that its subsequent rulemaking included notice and comment to adopt the Repeal Rule months later, that does not cure the failure to give the public an opportunity to weigh in with comments beforehand as required by the APA.

**V.     REMEDY**

Having found that Defendants violated the APA, the Court must fashion the appropriate remedy under the circumstances of this case. Plaintiffs have requested declaratory relief and vacatur. For the reasons discussed in Section IV.A, declaratory relief is the proper remedy for Defendants' violation of the APA. The Court grants a declaration that Defendants' postponement

of the effective date of the Rule was contrary to law.

Plaintiffs also contend that the Court should order vacatur of the postponement of the Rule because it is required under the APA, see 5 U.S.C. § 706(2), and is the "standard remedy" when a court concludes that an agency's conduct was illegal under the APA.  See Stewardship Council v. Envt'l Protection Agency, 806 F.3d 520, 532 (9th Cir. 2015); Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic and Atmospheric Admin., 109 F. Supp. 3d 1238, 1241 (N.D. Cal. 2015).  To determine if vacatur is appropriate under the circumstances of any given case, courts in the Ninth Circuit weigh two factors: "(1) the seriousness of the agency's errors and (2) the disruptive consequences that would result from vacatur."  Klamath-Siskiyou, 109 F. Supp. 3d at 1242 (citing Cal. Communities Against Toxics v. Envt'l Protection Agency, 688 F.3d 989, 992 (9th Cir. 2012) (per curiam)).  Defendants' errors here are serious.  See Nat. Res. Def. Council v. Envt'l Protection Agency, 489 F.3d 1364, 1374 (D.C. Cir. 2007) ("The agency's errors could not be more serious insofar as it acted unlawfully, which is more than sufficient reason to vacate the rules.").

The more difficult question is the disruptive consequences that would result from vacatur.  On the one hand, Plaintiffs argue that vacatur with reinstatement of the Rule will provide the required legal and regulatory clarity by ensuring that the illegal action has no further legal effect, especially given the potential that the repeal of the Rule will be appealed and possibly vacated at some point after September 6, 2017, and the postponement of the Rule could perhaps be argued to remain in place (albeit declared unlawful).

On the other hand, if the Court granted vacatur, the Rule would only be in place for a few days before the Repeal Rule takes effect.  Therefore, although Plaintiffs are correct that vacatur is the usual remedy for illegal rulemaking under the APA, vacatur would be unduly disruptive because it would require the industry to comply with the Rule for only a short time before switching gears to comply with its predecessor.  See Idaho Farm Bureau Federation v. Babbitt, 58 F.3d 1392, 1405-06 (9th Cir. 1995) (holding that the court may remand without vacatur "when equity demands").  If there comes a time in the future when the Repeal Rule itself is vacated, the issue of vacatur of the postponement could be addressed then.

## VI. CONCLUSION

Accordingly, the Court GRANTS Plaintiffs' motion for summary judgment on its claim for declaratory relief that Defendants violated the APA when they postponed the Rule under Section 705.

**IT IS SO ORDERED.**

Dated:  August 30, 2017

ELIZABETH D. LAPORTE
United States Magistrate Judge